UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                :

SUMMERWIND WEST CONDOMINIUM OWNERS    :
ASSOCIATION, INC.,
                                :

                Plaintiff,         :             22 Civ. 3165 (JPC)
                                :

                -v-             :           OPINION AND ORDER
                                :

MT HAWLEY INSURANCE CO. and            :
SYNDICATE 1458 AT LLOYD'S OF LONDON,   :
                                :

                Defendants.       :
                                :
------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      Plaintiff Summerwind West Condominium Owners Association brings a breach of contract claim against Defendants Mt. Hawley Insurance ("Mt. Hawley") and Syndicate 1458 at Lloyd's of London in this insurance coverage dispute over damage to Plaintiff's property purportedly caused by Hurricane Sally in September 2020. Defendants answered the Complaint in September 2021, and the Court-ordered deadline to amend pleadings expired in December that same year. Discovery concluded on February 1, 2023. Defendants have now moved for leave to amend their Answer to add a new affirmative defense premised on Plaintiff's fraudulent conduct, urging that evidence uncovered in discovery revealed Plaintiff's scheme to defraud Defendants and that such fraud voids the subject insurance policy. Plaintiff opposes the motion on futility and prejudice grounds. The Court finds that good cause exists to modify its scheduling order, that Defendants have adequately pleaded their proposed affirmative defense, and that any prejudice arising from the prospect of additional discovery is insufficient to warrant denial of leave to amend. Accordingly, the Court grants Defendants' motion.

## I.       Background

### A.       Plaintiff's Underlying Claim[1]

Plaintiff is a Florida corporation that operates Summerwind West Condominium, a building in Santa Rosa County, Florida, which was insured from August 2020 to August 2021 under a commercial property policy issued by Mt. Hawley[2] and Syndicate 1458 at Lloyd's of London, a United Kingdom corporation.  Complaint ¶¶ 3-7; *see also* Dkt. 44-2 ("Policy").  The subject property—one of three adjacent buildings, all managed by Anne Malone of Virtuous Management Group—was allegedly damaged by Hurricane Sally on September 16, 2020. Complaint ¶ 9; *see also* Motion at 2; Opposition at 2.

In November 2020, Plaintiff sent Mt. Hawley an estimate of over four million dollars of repairs for damages purportedly caused by the hurricane.  Dkt. 1 ¶ 8; *see also* Dkt. 1-5.  On December 11, 2020, Mt. Hawley's engineer determined that there was no wind damage to the subject property in excess of the Policy's deductible and thus Mt. Hawley denied coverage.  *See* Dkt. 44-3.  The next month, Plaintiff's public adjuster countered that he had documented extensive storm-created damage to the property's roofs, and that Plaintiff had also incurred over $500,000 in emergency elevator repairs from Cavinder Elevator Company due to the "considerable storm damages."  Dkt. 44-6 at 105-07.  But in March 2021, after its engineer reinspected the property, Mt. Hawley reaffirmed its denial.  Dkt. 44-7.

---

[1] To frame the relevant issues, the Court relies on the facts provided in the Complaint, Dkt. 1-3 ("Complaint"), Defendants' Notice of Removal, Dkt. 1, Defendants' instant motion and the exhibits attached thereto, Dkts. 44, 45 ("Motion"), and Plaintiff's opposition, Dkt. 46 ("Opposition").

[2] Plaintiff alleges in its Complaint that Mt. Hawley "is a for-profit corporation incorporated and existing under the laws of the State of Delaware," Complaint ¶ 4, but Defendants contend in their Notice of Removal that Mt. Hawley is "organized under the laws of Illinois," Dkt. 1 ¶ 12.

B.      **Procedural History**

Plaintiff commenced this action in Florida state court in August 2021, asserting a breach of contract claim against Defendants for their denial of coverage.  Within the next month, Defendants removed the action to the United States District Court for the Northern District of Florida, Dkt. 1, and thereafter moved to transfer the case to this District pursuant to 28 U.S.C. § 1404, citing the Policy's mandatory forum-selection clause requiring that any litigation by Plaintiff be initiated in New York, Dkt. 7.  On September 24, 2021, Defendants filed their Answer, in which they asserted thirteen affirmative defenses based on various coverage provisions and exclusions under the Policy.  *See* Dkt. 8.

In November 2021, while the action continued in the Northern District of Florida before the Honorable M. Casey Rodgers, the parties submitted a joint status report proposing a plan for discovery pursuant to Federal Rule of Civil Procedure 26(f) including, among other deadlines, a December 3, 2021 deadline for amending their pleadings.  *See* Dkt. 15 at 5.  In January 2022, the parties jointly moved to extend the discovery deadline to August 5, 2022 (presumably from March 28, 2022, as provided in Judge Rodgers's initial scheduling order, Dkt. 6).  Dkt. 16 at 3.  On February 3, 2022, Judge Rodgers granted the parties' extension requests, and issued a Final Scheduling Order.  Dkt. 17.  As relevant here, that Final Scheduling Order also adopted the parties' original proposed deadline for amendment of pleadings:

> In circumstances when the Federal Rules of Civil Procedure would require leave of court for adding parties or amending pleadings, parties may be added or pleadings amended only with leave of court.  The deadline to seek leave to join additional parties and to amend pleadings is December 3, 2021, for all parties.

*Id.* ¶ 3.

On April 18, 2022, the action was transferred to this District and assigned to the undersigned, who ordered that "all prior orders, dates, and deadlines shall remain in effect

notwithstanding the case's reassignment." Dkt. 20.  In May 2022, the parties submitted a joint request for a ninety-day extension of all outstanding discovery and pre-trial deadlines, which the Court granted, thereby extending the discovery deadline from August to November 2022.  Dkts. 25, 29, 30.  In October 2022, the parties again requested more time for discovery, and, again, the Court granted their request, extending the deadline to February 2023.  Dkts. 33, 34.  Discovery concluded on February 1, 2023, and the parties participated in a mediation conference on March 2, 2023, at which they were unable to reach a settlement.  Dkts. 35, 38.

On March 7, 2023, Defendants filed a pre-motion letter concerning their anticipated motion for leave to amend their Answer, Dkt. 37, and Plaintiff responded on March 22, 2023,  Dkt. 42. Upon consideration of those submissions, the Court set a briefing schedule for that motion.  Dkt. 43.  Defendants filed their motion on April 6, 2023, Dkts. 44-45, Plaintiff opposed on April 20, 2023, Dkt. 46, and Defendants replied on April 27, 2023, Dkt. 47.  In support of their motion, Defendants have submitted their proposed First Amended Answer, which includes a fourteenth affirmative defense premised on Plaintiff's fraudulent conduct.   Dkt. 44-16 ("Proposed Amendment") at 9.

## C.    Defendants' Instant Motion

In their motion for leave to amend, Defendants contend that they uncovered evidence in discovery revealing Plaintiff's fraudulent scheme to recover repair costs for damage incurred *before* Hurricane Sally to the subject property's roofs and elevators.  Specifically, Defendants point to minutes from a July 2020 condominium board meeting indicating that Plaintiff's property manager, Anne Malone, was instructed to solicit bids to replace both the elevators and roofs two months before the hurricane.  Motion at 4; *see also* Dkt. 44-9.  Apparently, Malone did solicit the elevator bids that month, and—in a July 2020 email to Matthew Cavinder (of Cavinder Elevator

Company)—disclosed that the subject property's elevators were "declining considerably and [we]re past their life expectancy" because they had taken "a significant hit when Hurricane Ivan hit back in 2004." Motion at 4; *see also* Dkt. 44-10. Defendants urge that Malone's position there stands in "stark contrast" with Malone's deposition testimony, in which she described only "minor" problems with the elevators before Hurricane Sally, and expressly denied that there was any need to modernize the elevators before that storm. Motion at 4-5 (quoting Dkt. 44-11 (Malone Dep. Tr.) at 95:23-96:3, 114:3-5).

Next, Defendants learned that in October 2020 (after Hurricane Sally), Malone emailed Cavinder to ask him to change the dates on the July 2020 elevators bids to October 2020. *Id.* at 5-6. In that email, Malone wrote: "Can you send that for the inn but change the date to today. Trying to push it under hurricane claim." Dkt. 44-12 at 3; Motion at 5-6, 14-15. Cavinder replied that same day, attaching the pre-storm bids, but now with the post-storm dates, for all three Summerwind buildings. Motion at 5; *see* Dkt. 44-12 at 2-3. Then, on November 17, 2020, Malone forwarded the updated elevator replacement bids to the public adjuster to include in the estimate submitted to Mt. Hawley. Motion at 6; *see* Dkt. 44-12 at 1.

Defendants explain that they repeatedly requested production of the Cavinder elevator bids generated for Plaintiff before Hurricane Sally, and that they rescheduled Cavinder's deposition multiple times so that he could bring those documents with him. Motion at 6. But at his January 2023 deposition, Cavinder ultimately testified that documentation of the July 2020 bids did not exist. Dkt. 44-13 (Cavinder Dep. Tr.) at 23:23-24:24); *see* Motion at 6. Defendants thus argue that the "mysterious disappearance of Cavinder's pre-storm bid" forms the "final piece of this fraudulent plan" concerning the elevator repairs. Motion at 6. Finally, Defendants contend that the absence of any pre-storm bids for the subject property's *roofs* similarly suggests fraud on

Plaintiff's part, in light of the July 2020 condominium board meeting minutes instructing Malone to solicit bids to replace the roofs as well. *Id.* at 7.

As a result, Defendants request leave to add an affirmative defense premised on Plaintiff's purported fraudulent misrepresentation and concealment "regarding major components of this insurance claim and the condition of Plaintiff's Property prior to the reported date of loss." Proposed Amendment at 9. Defendants argue that Plaintiff's conduct voids the Policy altogether, pursuant to its "Concealment, Misrepresentation or Fraud" provision:

> This policy is void in any case of fraud by [the Named Insured] as it relates to this Coverage at any time. It is also void if [the Named Insured] or any other insured, at any time, intentionally conceals or misrepresents a material fact concerning this policy, the Covered Property, [the Named Insured's] interest in the Covered Property, or a claim under this policy.

Policy at 17; *see* Motion at 3.

## II.  Legal Standard

Rules 15 and 16 of the Federal Rules of Civil Procedures set forth the standards under which a party may amend a pleading. At the outset of the litigation, a party may amend a pleading once as of right within the timeframe prescribed by Rule 15(a)(1)—that is, "(A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." After that period, pursuant to Rule 15(a)(2), amendment requires the opposing party's consent or the court's leave, which should be "freely give[n] when justice so requires." Under this liberal standard, courts allow amendment in the absence of a showing by the nonmovant of bad faith, prejudice, undue delay, or futility. *See Sacerdote v. New York Univ.*, 9 F.4th 95, 115 (2d. Cir. 2021); *Block v. First Blood Assoc.*, 988 F.2d 344, 350 (2d Cir. 1993).

But when a court issues a scheduling order expressly limiting the parties' ability to amend their pleadings after a certain date, Rule 15(a)'s permissive standard cedes to Rule 16(b)(4)'s unequivocal mandate that the court's scheduling order "may be modified only for good cause." Accordingly, a party seeking to amend a pleading after a court-issued deadline must satisfy two prerequisites: first, pursuant to Rule 16(b)(4), the party must demonstrate the existence of "good cause" justifying the proposed deviation from the court's scheduling order; and, second, the party must show that leave to amend is proper under Rule 15.  *See Sacerdote*, 9 F.4th at 115 ("It is still possible for the plaintiff to amend the complaint after such a deadline, but the plaintiff may do so only up[on] a showing of the 'good cause' that is required to modify a scheduling order under Rule 16(b)(4)."); *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 850 F. App'x 38, 43 (2d Cir. 2021) ("[W]here a party's motion to amend would require altering a court's scheduling order, the party must satisfy *both* Federal Rules of Civil Procedure 15 and 16 to be permitted to amend." (internal quotation marks omitted)).

## III.  Discussion

### A.  Application of Rule 16

Turning to the instant matter, Defendants concede that Rule 16's stricter "good cause" standard applies, given the Court's adoption of Judge Rodgers's final scheduling order setting a firm deadline for amendment of pleadings, Dkts. 17, 20.  Motion at 7-8; *see Sacerdote*, 9 F.4th at 115 ("The period of 'liberal' amendment ends if the district court issues a scheduling order setting a date after which no amendment will be permitted.").  To determine the existence of good cause, the Court must inquire into the movant's diligence in attempting to adhere to the Court-issued deadline.  *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003); *see also* Fed R. Civ. P., Adv. Comm. Notes to 1983 Amendment ("[T]he court may modify the schedule on a showing of

good cause if it cannot reasonably be met despite the diligence of the party seeking the extension."). Here, Defendants first sought leave to amend their Answer when they submitted their pre-motion letter to this Court on March 7, 2023—over a year after the December 2021 deadline for such amendment and slightly more than a month after the close of discovery on February 1, 2023. To be sure, such delay can justify denial of leave. *See, e.g.*, *Shi Ming Chen v. Hunan Manor Enter., Inc.*, 437 F. Supp. 3d 361, 366-67 (S.D.N.Y. 2020) (granting a motion to amend a complaint after the close of discovery in part and denying the motion in part; denying leave to add new defendants where the plaintiffs gave no explanation for delay). But, here, the Court finds that Defendants have acted with sufficient diligence to excuse their tardiness. And notably, Plaintiff does not contest Defendants' diligence.

As they explained in their motion, Defendants lacked any basis in the earlier stages of this litigation to assert a fraud-based affirmative defense. Motion at 12. Only when the board meeting minutes and email communications between Malone and Cavinder surfaced during discovery and when Cavinder finally confirmed at his January 2023 deposition that he could not produce any pre-Hurricane Sally elevator bid—despite his and Malone's prior representations that such a bid existed—did Defendants have any reason to suspect fraudulent conduct on Plaintiff's part. *Id.* Moreover, according to Defendants, Mt. Hawley contends that it tried to reach Cavinder's counsel after Cavinder's deposition to ask how the pre-hurricane bid, which presumably had been transmitted via email, was unrecoverable through metadata. *Id.* at 13. But Cavinder's counsel supposedly never returned Mt. Hawley's call, and the discovery period expired. *Id.*

Plainly, this is not a case where the party seeking tardy amendment has simply rested on information it knew or should have known before the amendment deadline. *See Sokol Holdings, Inc. v. BMD Munai, Inc.*, No. 05 Civ. 3749 (KMW), 2009 WL 2524611 at *8 (S.D.N.Y. Aug. 14,

2009) ("Examples of a party's failure to act with sufficient diligence include basing a proposed amendment on information that the party knew, or should have known, in advance of the deadline.").   Rather, Defendants had unearthed only through discovery the factual bases upon which they could in good faith assert their proposed fraud defense.  *Cf.* Fed. R. Civ. P. 11(b)(3) (representations to the court must have evidentiary support).   Accordingly, the Court finds that Defendants have demonstrated the requisite good cause for allowing amendment after the deadline set forth in the Court's scheduling order.  *See Salomon v. Adderley Indus., Inc.*, 960 F. Supp. 2d 503, 507 (S.D.N.Y. 2013) ("Because Plaintiffs learned about the putative employer status of the additional parties through discovery after the expiration of the scheduling order deadline, their inability to add the parties prior to the expiration of the deadline does not constitute a failure of their diligence."); *Soroof Trading Dev. Co., Ltd. v. GE Microgen, Inc.*, 283 F.R.D. 142, 148-49 (S.D.N.Y. 2012) (finding diligence and allowing amendment in light of facts allegedly learned during discovery).

## B.  Application of Rule 15

Moreover, the Court finds that permitting amendment in this case would be neither futile nor unduly prejudicial to Plaintiff.[3]

### a.  Futility

The nonmovant bears the burden of establishing the futility of a proposed amendment. *Summit Health, Inc. v. APS Healthcare Bethesda, Inc.*, 993 F. Supp. 2d 379, 404 (S.D.N.Y. 2014). Leave to amend to add an affirmative defense may be denied on futility grounds if the defense would not withstand a motion to strike pursuant to Federal Rule of Civil Procedure 12(f), which

---

[3] Because Plaintiff opposes amendment on the basis of futility and undue prejudice (and not for undue delay or bad faith), the Court examines the Proposed Amendment on those grounds alone.

applies the same standard governing Rule 12(b)(6) motions to dismiss.  *See Pristine Jewelers NY, Inc. v. Broner*, 492 F. Supp. 3d 130, 132 (S.D.N.Y. 2020) ("In the case of an amendment to add a new defense, futility ought technically to turn on the proposed defense's legal sufficiency and whether it is subject to a motion to strike under [Rule] 12(f), though the distinction is largely semantic since the standard by which 12(f) and 12(b)(6) motions are evaluated are mirror images." (internal quotation marks and brackets omitted)); *see also GEOMC Co., Ltd. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 98 (2d Cir. 2019) ("We conclude that the plausibility standard of *Twombly* applies to determining the sufficiency of all pleadings, including the pleading of an affirmative defense.").

Affirmative defenses sounding in fraud must also meet the heightened pleading standards of Federal Rule of Civil Procedure 9(b).  *Coral Crystal, LLC v. Fed. Ins. Co.*, No. 17 Civ. 1007 (LTS) (BCM), 2021 WL 84308, at *5 (S.D.N.Y. Jan. 11, 2021).  Specifically, "Rule 9(b) requires that 'a party must state with particularity the circumstances constituting fraud' although '[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally.'"  *Valentini v. Grp. Health Inc.*, No. 20 Civ. 9526 (JPC), 2021 WL 6113991, at *3 (S.D.N.Y. Dec. 27, 2021) (alteration in original) (quoting Fed. R. Civ. P. 9(b)), *aff'd*, No. 22-157, 2023 WL 2027273 (2d Cir. Feb. 16, 2023).  Stated differently, in addition to meeting Rule 12's facial plausibility standard, Defendants must overcome two additional hurdles imposed by Rule 9—"the first goes to the pleading of the circumstances of the fraud, the second to the pleading of [Plaintiff's] mental state."  *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015).  As to the circumstances of fraud, Defendants must (1) specify the purportedly fraudulent statement, (2) identify the speaker, (3) state where and when the statement was made, and (4) explain why the statement is fraudulent.  *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375

F.3d 168, 187 (2d Cir. 2004).  And as to Plaintiff's mental state, Defendants must allege facts "that give rise to a strong inference of fraudulent intent."  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-91 (2d Cir. 2006).

As discussed above, *supra* I.C, Defendants' motion to add an affirmative defense is based on Plaintiff's alleged fraudulent conduct, which Defendants contend warrants vitiation of the Policy.  Plaintiff argues that the Proposed Amendment is futile because, according to Plaintiff, Defendants have failed to "specify the statements it claims were false or misleading," to "give particulars as to the respect in which [] the statements were fraudulent," and to "state when and where the statements were made."  Opposition at 5.  These arguments are unpersuasive.

In their proposed defense, Defendants accuse Plaintiff of claiming "that its elevators and roofs were damaged by the storm beyond repair when, in fact, Plaintiff was already in the process of replacing the elevators and roofs before the storm because they were deteriorated and beyond their useful lives."  Proposed Amendment at 9.  They claim that Plaintiff's property manager "specifically instructed" the elevator company to "doctor" the pre-storm elevator replacement bid "to create the appearance it was generated after the hurricane," and then submitted that "doctored bid" to Mt. Hawley during the claim investigation to inflate the estimated repair costs for covered damage.  *Id.*  Finally, they allege that Plaintiff's property manager testified falsely during her deposition that the elevators were not experiencing any major problems before the hurricane, and that the pre-hurricane solicitation of elevator bids was purely for budgetary reasons.  *Id.*  Notwithstanding Plaintiff's bare contention to the contrary, these factual allegations clearly set forth the "who, what, when, where, and how of the alleged fraud," *Bauman v. Mount Sinai Hosp.*,

452 F. Supp. 2d 490, 503 (S.D.N.Y. 2006) (internal quotation marks omitted), which, when taken as true, give rise to the requisite strong inference of Plaintiff's intent to defraud Defendants.[4]

Next, Plaintiff urges that Defendants have failed to adduce sufficient evidence to meet the clear-and-convincing standard for their fraud defense.  Opposition at 6.  By predicating the bulk of their futility arguments on the evidentiary sufficiency of Defendants' affirmative defense, both parties appear to be inviting this Court to assess Defendants' motion under a summary judgment standard.  *See, e.g.*, Motion at 14 (discussing evidentiary sufficiency of Defendants' proposed defense); Opposition at 6-9 (same).  The Court declines to do so.

Ordinarily, "consideration of the evidentiary basis for a proposed [amendment] is inappropriate," given that the futility inquiry in the context of motions to amend "generally proceeds according to the standard applicable under Rule 12(b)(6)."  *HCC, Inc. v. R H & M Mach. Co.*, 39 F. Supp. 2d 317, 324 (S.D.N.Y. 1999).  "In the less common case where the Court is asked to review a proposed amendment with the benefit of a full discovery record," however, a Court may properly consider "whether the proposed amended complaint would be subject to dismissal

---

[4] Plaintiff also asserts that the Proposed Amendment is futile because Defendants can "show no sworn statement under oath," given that "no examination under oath was requested by Defendants" in connection with the investigation.  Opposition at 9.  In arguing that the Policy's fraud provision contemplates only fraudulent statements made under oath, Plaintiff seemingly relies on decisions from this District and the Western District of New York providing that to void a policy under such provision, "an insurer must show . . . that the insured willfully made a false and material statement *under oath* with the intent to defraud."  *Id.* at 6 (emphasis added).  But the requirement that the fraudulent statement arise in an examination under oath is not supported by the text of relevant provision here, which broadly provides for vitiation of the Policy "if [the Named Insured] or any other insured, at any time, intentionally conceals or misrepresents a material fact concerning the policy."  Policy at 17; *cf. Terwilliger v. Terwilliger*, 206 F.3d 240, 245 (2d Cir. 2000) ("Under New York law, a written contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language they have employed.").  Moreover, the Second Circuit has explained in the context of such fraud provisions that "[t]here is no distinction between false statements made in proof of loss statements and false statements made under oath."  *Fine v. Bellefonte Underwriters Ins. Co.*, 758 F.2d 50, 52 (2d Cir. 1985).

under Rule 56 of the Federal Rules of Civil Procedure for lack of a genuine issue of material fact."
*Huber v. Nat'l R.R. Passenger Corp.*, No. 10 Civ. 9348 (ALC) (DF), 2012 WL 6082385, at *5
(S.D.N.Y. Dec. 4, 2012); *see also Stoner v. N.Y.C. Ballet Co.*, No. 99 Civ. 196 (BSJ), 2002 WL
523270, at *14 (S.D.N.Y. Apr. 8, 2002) (denying a motion to amend where the additional claim
"would immediately be subject to dismissal on a motion for summary judgment").  But a court is
not *required* to do so.  *See HCC, Inc.*, 39 F. Supp. 2d at 325 (declining to apply summary judgment
standard to motion to amend filed after the close of discovery, given that parties had not submitted
full summary judgment briefing to the court).

The Court finds that the present circumstances do not warrant review of Defendants'
Proposed Amendment under a summary judgment standard.  First, the Court lacks the benefit of
full summary judgment briefing on the issue.  *See Qanouni v. D&H Ladies Apparel LLC*, No. 18
Civ. 2763 (GBD) (DF), 2021 WL 9036182, at *11 (S.D.N.Y. Mar. 23, 2021) ("Where no summary
judgment motion has yet been filed, there is little reason to view a proposed amendment through
a Rule 56 lens.").  Second, Plaintiff has urged that allowing the amendment will "necessitate
reopening of discovery."  Opposition at 9.  And while the Court takes no position on the validity
of Plaintiff's contention, which Defendants dispute, the prospect of additional discovery further
weighs against prematurely subjecting Defendants' amendment to a summary judgment inquiry.

### b.  Undue Prejudice

To that end, the Court finds Plaintiff's purported need for additional discovery in this
matter insufficient to warrant denial of Defendants' motion.  Of course, prejudice may arise when
amendment "w[ill] require the opponent to expend significant additional resources to conduct
discovery and prepare for trial."  *Block*, 988 F.2d at 350.  But "prejudice alone is insufficient to
justify a denial of leave to amend; rather, the necessary showing is *undue* prejudice to the opposing

party." *A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*, 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000) (internal quotation marks omitted).  And "the fact that the opposing party will have to undertake additional discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading." *Christians of Cal., Inc. v. Clive Christian N.Y., LLP*, No. 13 Civ. 275 (KBF) (JCF), 2014 WL 3605526, at *5 (S.D.N.Y. July 18, 2014) (internal quotation marks omitted).

Here, it is unclear what additional discovery Plaintiff would require to respond to Defendants' allegations respecting Plaintiff's own conduct.  But, to the extent more discovery is necessary, it appears that such discovery would be limited in scope and time.  Moreover, "[t]his is not a case where the amendment came on the eve of trial and would result in new problems of proof." *State Tchrs. Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981).  The Court has yet to set a trial date, and, as mentioned above, neither party has filed a motion for summary judgment. *Cf. id.* (concluding that the district court abused its discretion when it denied leave to amend where no trial date had been set, no motion for summary judgment had been filed by the nonmovant, and amendment would not have involved "a great deal of additional discovery").

Accordingly, the Court finds that Plaintiff has not shown undue prejudice that it will suffer from the Proposed Amendment.

## IV.  Conclusion

For the foregoing reasons, the Court grants Defendants' motion to amend.  Defendants shall file their amended answer by December 8, 2023.  By December 15, 2023, the parties shall file a joint status letter indicating whether they continue to disagree as to the need to reopen discovery.  The parties shall additionally advise the Court whether they intend to file any post-discovery motions, and, if so, jointly propose a briefing schedule for those motions.

14

The Clerk of Court is respectfully directed to close the motion pending at Docket Number

44.

        SO ORDERED.

Dated: December 1, 2023
       New York, New York

                                       JOHN P. CRONAN
                             United States District Judge